IRENE B. FOSTER v. WINSTON-SALEM JOINT VENTURE, A GENERAL PARTNER-
SHIP; JACOBS, VISCONSI & JACOBS COMPANY; CENTER RIDGE CO.;
BELK-HENSDALE COMPANY OF FAYETTEVILLE, N.C., INC.; SEARS,
ROEBUCK AND COMPANY; AND J. C. PENNEY PROPERTIES, INC.

No. 124

(Filed 17 August 1981)

**1. Negligence § 55— invitee injured by acts of criminal—sufficiency of complaint to state claim**

If an invitee alleges in a complaint that he was on the premises of a store owner during business hours for the purpose of transacting business thereon and that while he was on the premises injuries were sustained from the criminal acts of a third person, which acts were reasonably foreseeable by the store owner and which could have been prevented by the exercise of ordinary care, then the plaintiff has set forth a cause of action in negligence which, if proved, would entitle plaintiff to recover damages from the store owner.

**2. Negligence § 55— invitee injured by criminal—sufficiency of complaint to state claim**

Plaintiff's complaint was sufficient to state a cause of action in negligence against defendant shopping mall owners where the complaint alleged that, at the time plaintiff was assaulted in defendants' parking lot, she was present on the premises during business hours for the purpose of shopping at defendants' mall; had defendants taken adequate precautions to provide for the safety of the customers, plaintiff would not have sustained the injuries complained of; defendants breached their duty adequately to patrol and provide security for the mall parking lot, and breach of this duty was the proximate cause of plaintiff's injuries; in the year preceding the assault upon plaintiff, at least twenty-nine incidents of crime were reported as having taken place in the mall parking lot; and these incidents were sufficient to charge defendants with the knowledge that the parking lot was unreasonably dangerous to the customers who used it.

**3. Negligence § 57.10— assault in mall parking lot—summary judgment for owners improper**

In an action to recover for injuries sustained by plaintiff during an assault in the parking lot of defendants' shopping mall, the trial court erred in entering summary judgment for defendants where genuine issues of fact existed as to whether notice to defendants of thirty-one criminal incidents in the parking lot during the preceding year placed defendants on notice that the likelihood of criminal conduct existed in the parking lot and as to whether defendants, by providing only one guard to patrol the large parking area during the busy shopping period five days before Christmas, breached their duty to exercise reasonable care to maintain the shopping center premises in such a manner that they might be used safely by the customers invited thereon.

Foster v. Winston-Salem Joint Venture

Justice CARLTON dissenting.

Chief Justice BRANCH concurs in the dissenting opinion.

PLAINTIFF appeals as a matter of right from the decision of the Court of Appeals, 50 N.C. App. 516, 274 S.E. 2d 265 (1981) (opinion by *Judge Hill* with *Judge Arnold* concurring and *Judge Wells* dissenting). The Court of Appeals affirmed summary judgment entered in favor of defendant by *Hairston, J.,* at the 28 January 1980 Civil Session of Superior Court, DAVIE County.

This case arose out of an assault on plaintiff, Irene B. Foster, in the parking lot of Hanes Mall Shopping Center in Winston-Salem, North Carolina. Defendants are the owners of Hanes Mall.

Plaintiff drove her car to Hanes Mall on 20 December 1976 and parked near the entrance of Belk's Department Store. She purchased several items at the shopping center and returned to her car at approximately 4:30 p.m. As she was placing her purchases in the car she was assaulted by two unidentified males who beat her, violently pushed her onto the seat of the car, and then threw her to the pavement, continuing to beat and kick her. The assailants robbed plaintiff of her purse and about $145.00. After the two males fled, plaintiff crawled across the parking lot to Belk's Department Store and reported the incident.

Plaintiff brought this action claiming that defendants were negligent in failing to provide adequate security for the protection of their patrons in the mall parking lot, and that this negligence was the proximate cause of plaintiff's injuries. Defendants' own evidence, presented with their motion for summary judgment, indicates that there were thirty-six criminal incidents reported at the mall during a period of one year prior to the assault on plaintiff. From the Court of Appeals' decision affirming summary judgment entered in favor of defendants, plaintiff appeals as a matter of right pursuant to G.S. 7A-30(2).

*Hutchins & Tyndall by Richard D. Ramsey for plaintiff-appellant.*

*Womble, Carlyle, Sandridge & Rice by Allan R. Gitter and James M. Stanley, Jr. for defendant-appellees.*

*Johnson, Gamble & Shearon by Samuel H. Johnson amicus curiae for North Carolina Merchants Association.*

COPELAND, Justice.

Plaintiff presents two issues for our determination; first, whether plaintiff has a cause of action against defendants in negligence for their alleged failure to provide adequate security in the Hanes Mall parking lot, and second, if it is determined that plaintiff has stated a claim for relief, whether she has presented sufficient evidence in support of her claim to withstand defendants' motion for summary judgment. For the reasons stated below, we affirm that portion of the Court of Appeals' decision which held that plaintiff had stated a proper claim for relief, reverse that portion of the decision which found that plaintiff had failed to present sufficient evidence to withstand defendants' motion for summary judgment, and remand for a trial on the merits.

It is well established that an individual who enters the premises of a store as a customer during business hours holds the status of a business invitee for purposes of establishing the duty owed to the individual by the owner of the premises. *Smithson v. W. T. Grant Co.*, 269 N.C. 575, 153 S.E. 2d 68 (1967); *Long v. National Food Stores, Inc.*, 262 N.C. 57, 136 S.E. 2d 275 (1964). A parking lot provided by the owner for the use of his invitees is considered part of the premises of the store to which the duty owed by the owner extends. *Game v. Charles Stores Company, Inc.*, 268 N.C. 676, 151 S.E. 2d 560 (1966). The general duty imposed upon the owner is not to insure the safety of his customers, but to exercise ordinary care to maintain his premises in such a condition that they may be used safely by his invitees in the manner for which they were designed and intended. *Husketh v. Convenient Systems, Inc.*, 295 N.C. 459, 245 S.E. 2d 507 (1978); *Wagner v. Delly-Land Delicatessen, Inc.*, 270 N.C. 62, 153 S.E. 2d 804 (1967); *Long v. National Food Stores, Inc., supra.*

Ordinarily the store owner is not liable for injuries to his invitees which result from the intentional, criminal acts of third persons. It is usually held that such acts cannot be reasonably foreseen by the owner, and therefore constitute an independent, intervening cause absolving the owner of liability. *Williams v. Mickens*, 247 N.C. 262, 100 S.E. 2d 511 (1957); *Ross v. Atlantic Greyhound Corp.*, 223 N.C. 239, 25 S.E. 2d 852 (1943); *Ward v. Southern Railway*, 206 N.C. 530, 174 S.E. 443 (1934). Nevertheless, the Court recognized in these cases that where circumstances ex-

isted which gave the owner reason to know that there was a likelihood of conduct on the part of third persons which endangered the safety of his invitees, a duty to protect or warn the invitees could be imposed. In *Aaser v. City of Charlotte*, 265 N.C. 494, 499, 144 S.E. 2d 610, 615 (1965), this Court discussed a landowner's general duty to protect his invitees from injury caused by the acts of third persons as follows:

"In the place of amusement or exhibition, just as in the store, when the dangerous condition or activity . . . arises from the act of third persons, whether themselves invitees or not, the owner is not liable for injury resulting unless he knew of its existence or it had existed long enough for him to have discovered it by the exercise of due diligence and to have removed or warned against it."

*See also Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977).

[1]  The Restatement (second) of Torts, Section 344, sets forth the duty owed by a store owner to protect his invitees from the acts of third persons as follows:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment f to section 344 further provides:

"Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the

visitor even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of the third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."

Thus, under both the Restatement (Second) of Torts and the prior decisions of this Court, foreseeability is the test in determining the extent of a landowner's duty to safeguard his business invitees from the criminal acts of third persons. *See Tyndall v. United States*, 295 F. Supp. 448 (E.D.N.C. 1969). If an invitee, such as the plaintiff in this case, alleges in a complaint that he or she was on the premises of a store owner, during business hours for the purpose of transacting business thereon, and that while he or she was on the premises injuries were sustained from the criminal acts of a third person, which acts were reasonably foreseeable by the store owner, and which could have been prevented by the exercise of ordinary care, then the plaintiff has set forth a cause of action in negligence which, if proved, would entitle that plaintiff to recover damages from the store owner.

This holding is supported by the decisions of other jurisdictions. Under facts nearly identical to those of the case before us, the court in *Morgan v. Bucks Association*, 428 F. Supp. 546 (E.D. Pa. 1977), followed Section 344 of the Restatement (Second) of Torts and upheld a jury verdict in favor of plaintiff against the defendant shopping center owner where plaintiff presented sufficient evidence to submit to the jury the question of whether defendant knew or had reason to know that assaults on customers might occur in the shopping center parking lot. The court in *O'Brien v. Colonial Village, Inc.*, 119 Ill. App. 2d 105, 255 N.E. 2d 205 (1970), likewise acknowledged that a cause of action in negligence could be established under facts similar to those of the case *sub judice*. In *O'Brien* the plaintiff's complaint was dismissed for failure to allege that defendants had knowledge of previous incidents or circumstances which would indicate their awareness of any danger of criminal activity occurring in the shopping mall parking lot. The court noted that had plaintiff amended her complaint to allege such awareness on the part of defendants, the

court would have been compelled to deny defendants' motion to dismiss. *Accord Kenny v. Southeastern Pennsylvania Transportation Authority*, 581 F. 2d 351 (3d Cir. 1978); *Taylor v. Centennial Bowl, Inc.*, 65 Cal. 2d 114, 416 P. 2d 793, 52 Cal. Rptr. 561 (1966); *Atamian v. Supermarkets General Corp.*, 146 N.J. Super. 149, 369 A. 2d 38 (1976). *But see Cornpropst v. Sloan*, 236 Tenn. 188, 528 S.W. 2d 188 (1975). We find the holdings of the courts in *Morgan* and *O'Brien* well reasoned and in compliance with the general established principles of tort liability for negligence.

[2]  Plaintiff in the present action alleged in her complaint that at the time she was assaulted in defendants' parking lot, she was present on the premises during business hours for the purpose of shopping at the mall owned by defendants. She further stated that had defendants taken adequate precautions to provide for the safety of their customers, she would not have sustained the injuries complained of. She thus contends that defendants breached their duty to adequately patrol and provide security for the mall parking lot, and that the breach of this duty was the proximate cause of her injuries. In support of her claim that defendants had a duty to provide security measures to protect their customers in the parking lot, plaintiff contends that in the year preceding the assault upon her, at least twenty-nine incidents of crime were reported as having taken place in the mall parking lot. These incidents, she maintains, were sufficient to charge defendants with the knowledge that the parking lot was unreasonably dangerous to the customers who used it. We find these allegations sufficient to state a cause of action against defendants in negligence.

[3]  In addition, we hold that plaintiff presented sufficient evidence in support of her claims to withstand defendants' motion for summary judgment. Summary judgment is properly granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c); *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). The party moving for summary judgment has the burden of establishing the absence of any triable issue of fact. The purpose of Rule 56 is not to allow the court to decide an issue of fact, but to determine whether a genuine issue of fact exists and thereby

eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim or defense of a party is exposed. *Econo-Travel Motor Hotel Corp. v. Taylor*, 301 N.C. 200, 271 S.E. 2d 54 (1980); *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979).

Defendants claim that plaintiff failed to present sufficient proof to withstand their motion for summary judgment on the issues of (1) the foreseeability of criminal acts in the mall parking lot which would create a duty in defendants to provide adequate protection for its customers and (2) assuming such a duty exists, that defendants breached this duty by failing to provide adequate security measures.

In support of her claim that defendants were aware that a likelihood of criminal conduct existed in the mall parking lot, plaintiff submitted an interrogatory listing thirty-one incidents of criminal activity reported on defendants' premises during the period from 1 January 1976 to 19 December 1976, the day before the assault upon her. Defendants acknowledged that these incidents had been reported and that they were aware of them. Although only four or five of the reported crimes were characterized as "assaults," we believe the evidence of repeated incidents of criminal activity could be sufficient for the jury to determine that defendants knew or had reason to know of the existence of a likelihood of injury to its customers from the criminal acts of third persons. It is axiomatic that to establish the element of foreseeability, the plaintiff need not prove that the defendant foresaw the injury in the exact form in which it occurred. The plaintiff need only show that in the exercise of reasonable care the defendant should have foreseen that some injury would result from his act or omission or that consequences of a generally injurious nature might have been expected. *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1979); *McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972); *Johnson v. Lamb*, 273 N.C. 701, 161 S.E. 2d 131 (1968). We cannot hold as a matter of law that the thirty-one criminal incidents reported as occurring on the shopping mall premises within the year preceding the assault on plaintiff were insufficient to charge defendants with knowledge that such injuries were likely to occur. The issue of foreseeability should therefore be determined by the jury, and the Court of Appeals erred in affirming the trial court's order granting summary judgment in favor of defendants.

We likewise find that plaintiff presented adequate evidence of defendants' breach of their duty owed to her to withstand defendants' summary judgment motion. The manager of Hanes Mall, who had the responsibility to provide security for the shopping center, testified upon deposition that only one guard had been employed to patrol the parking lot on the date that plaintiff was assaulted. He further stated that he had represented to the public that the mall had augmented its security measures for the Christmas season, but that he had taken no steps to increase the number of guards patrolling the parking lot area. We believe that a jury could reasonably find that by providing only one guard to patrol the large parking area during the busy shopping period five days before Christmas, defendants breached their duty to exercise reasonable care to maintain the shopping center premises in such a manner that they might be used safely by the customers invited thereon. Since a triable issue of fact exists, summary judgment in favor of defendants was improperly granted.

Accordingly, we affirm that portion of the Court of Appeals' opinion which found that plaintiff had stated a proper claim for relief, reverse that portion of the decision which held that plaintiff had failed to present sufficient evidence in support of her claim to withstand defendants' motion for summary judgment, and remand to the Court of Appeals for further remand to the Superior Court of Davie County for a trial on the merits.

Affirmed in part, reversed in part, and remanded.

Justice CARLTON dissenting.

I must respectfully dissent. I fear that the majority has created a duty, with a potentially limitless scope, on the part of landowners to protect their invitees against sudden and intentional criminal acts of third parties. I find the majority opinion objectionable for two reasons: (1) it gives no persuasive reason for creating such a duty and (2) plaintiff has not alleged sufficient facts to show that a *criminal assault* was reasonably foreseeable by the defendant.

The majority attempts to predicate the recognition of the duty on the foreseeability of criminal activity. This, I believe, is a fundamental error. As stated by Chief Judge Reilly in *Cook v. Safeway Stores, Inc.*, 354 A. 2d 507, 508-09 (D.C. 1976):

"Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide 'police' protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.

"The question is not simply whether a criminal event is foreseeable, but whether a *duty* exists to take measures to guard against it. Whether a *duty* exists is ultimately a question of fairness." . . . [*Goldberg v. Housing Authority of City of Newark*, 38 N.J. 578, 583, 186 A. 2d 291, 293 (1962) (Emphasis in original).]

The question this Court should first address is whether it is *fair* to impose upon a retail merchant a duty to protect its invitees from sudden and intentional criminal acts of third parties. Such an inquiry should take into account the relationship of the parties, the nature of the risk, and the public interest in the proposed solution. As stated by the New Jersey Supreme Court in a case involving the duty of a landowner to provide police protection for tenants of a housing project:

Fairness ordinarily requires that a man be able to ascertain in advance of a jury's verdict whether the duty is his and whether he has performed it. To which multi-family houses would the duty apply? Would it depend upon the number of tenancies? If so, can we now fix the number? And if the duty springs from a combination of tenancies and prior unlawful events, what kind of offenses will suffice, and in what number, and will crimes next door or around the corner or in the neighborhood, raise the obligation? And if a prescient owner concludes the duty is his, what measures will discharge it? It is an easy matter to know whether a stairway is defective and what repairs will put it in order. Again, it is fairly simple to decide how many ushers or guards suffice at a skating rink or a railroad platform to deal with the crush of a crowd and the risks of unintentional injury which the nature of the business creates, but how can one know

what measures will protect against the thug, the narcotic addict, the degenerate, the psychopath and the psychotic? Must the owner prevent all crime? We doubt that any police force in the friendliest community has achieved that end. How then can the owner know what is enough to protect the tenants in their persons and property? . . . We assume that advocates of liability do not intend an absolute obligation to prevent all crime, but rather have in mind some unarticulated level of effectiveness short of that goal. Whatever may be that degree of safety, is there any standard of performance to which the owner may look for guidance? We know of none, and the record does not suggest one, and we are at a loss to understand what standard the jurors here employed. The charge to the jury was unrevealing; it simply left to 12 men and women the task of deciding whether a prudent owner would have done more, and whether, if defendant had, the robbers here would likely have been deterred. . . .

*Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 589-90, 186 A. 2d 291, 297 (1962); *accord, Ellis v. Safeway Stores, Inc.*, 410 A. 2d 1381 (D.C. 1979); *Cook v. Safeway Stores, Inc.*, 354 A. 2d 507 (D.C. 1976); *Davis v. Allied Supermarkets, Inc.*, 547 P. 2d 963 (Okla. 1976); *Cornpropst v. Sloan*, 528 S.W. 2d 188 (Tenn. 1975).

Another consideration which should be weighed in the balance is whether the owner has a right to develop, or should be allowed to develop, a private police force to patrol its parking lots. *See Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 186 A. 2d 291. Although the right to maintain a security force is unquestioned, security forces operate for the benefit of the merchant to protect him from theft and achieve their goal primarily through their conspicuousness. If protection of patrons becomes the goal of private security forces, then the security personnel will become members of a private police force who, like their public counterparts, will require special training and special skills. They must be trained to detect potential criminals and to do whatever is required to prevent assaults, if such assaults are foreseeable. In my opinion, the creation of myriad private police forces and the shift of law enforcement duties to the private sector amounts to taking the law into one's own hands and contravenes public policy.

Even if I were to agree that a limited duty to protect its patrons on the part of a merchant could exist I cannot agree that

it arises in this case. A duty to protect arises only in the event a criminal assault is foreseeable. During the fifteen months prior to the assault on plaintiff, a total of approximately thirty-seven criminal incidents occurring in the parking lot had been reported to defendant. Of these, twenty-seven involved larceny or damage to property; only six or seven involved assaults on a person; the remainder involved reckless driving, public drunkenness and indecent exposure.

From these statistics, I would agree that while larceny of personal property was foreseeable, a physical assault was not. The incidence of physical assault was less than one every two months. If a duty to protect arises in this case because of the foreseeability of certain criminal activity, it must be a duty to protect against larceny, the only type of criminal activity which was even arguably foreseeable.

The cases relied on by the majority premise the existence of the duty to protect against personal assaults on patrons on the foreseeability of criminal assaults. In those cases, criminal assaults were found to be foreseeable only because of the high incidence of *criminal assaults* in the past. In short, the foreseeability was only as broad as the type of criminal activity which had occurred in the past. These courts did not state, or even imply, that a history of criminal assaults made other crimes, such as larceny, foreseeable. Here, the majority has premised the foreseeability of criminal assaults upon the history of larceny in the mall parking lot. The cases the majority has cited in support of its reasoning provide no support for making the scope of foreseeability broader than the scope of past experience.

Additionally, I would argue that the Restatement (Second) of Torts supports my argument that criminal assaults are foreseeable only if the same type of criminal activity has occurred in the past at sufficiently high rates. Section 344 of the Restatement imposes liability for *"physical harm"* (emphasis added) when the possessor of the land should, in the exercise of reasonable care, "discover that *such acts* are being done or are likely to be done." (Emphasis added.) The duty to protect, as explained by comment f, arises whenever past experience indicates "that there is a likelihood of conduct on the part of third persons in general which is *likely to endanger the safety of the visitor."* (Emphasis

added.) These statements indicate that before the duty to protect arises, an endangerment of the patrons' *safety* must be foreseeable due to *past experience*. If foreseeability is limited to the types of criminal activity which have frequently occurred, then a high incidence of larceny cannot make a criminal assault foreseeable.

Finally, I would dismiss plaintiff's complaint because it fails to allege that the incidence of criminal activity in defendant's parking lot was any higher than the crime rate for the surrounding neighborhood. It seems to me that if the parking lot was just as safe, or as dangerous, as the surrounding area, no duty on the part of the owner should arise because the foreseeability of criminal activity is equally obvious to the owner or the patron. It must be remembered that to fulfill the duty to protect, the defendant must either correct the condition or warn of it. When the incidence of criminal activity within the borders of a shopping center parking lot is the same as without, the patron is simply taking a *known* and *accepted* risk in venturing out. Additionally, if the crime rates are substantially the same, what legal theory or social policy compels the owner to make his premises safer? What right does a patron have to demand that the store premises be safer than the general area in which it is situated? And how safe is safe enough?

Although I recognize the commendability of promoting safety in quasi-public places such as shopping centers, I remain resolute that the route chosen by the majority is not the appropriate means. For the above reasons, I vote to affirm the Court of Appeals and uphold dismissal of plaintiff's complaint for failure to state a claim for which relief can be granted.

Chief Justice BRANCH concurs in this dissenting opinion.